# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **BETTY PAYNE** | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 7:18-CV-0024-DC** |
| | § | |
| **WAL-MART STORES TEXAS, LLC** | § | |
| **Defendant** | § | |

### AFFIDAVIT OF JASON T. ENGLISH, M.S., CSP, P.E.

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BRAZOS | § |

BEFORE ME, the undersigned notary, on this day personally appeared Jason T. English, M.S., CSP, P.E., who after being duly sworn on his oath, deposes and says:

1. "My name is Jason T. English. I am over the age of twenty-one (21) years, I have never been convicted of a felony, and I am competent to make this affidavit. My business address is 543 William D. Fitch Pkwy, Suite 112, College Station, Texas 77845. I am the owner and president of English Engineering Inc., a registered engineering firm in the State of Texas (F-11049). I have been a professional engineering consultant since 1999, primarily consulting in the field of safety engineering, including workplace safety, premises safety, product safety, safety management, and human factors/ergonomics. My formal education consists of earning a Bachelor of Science degree in Industrial Engineering, to include completion of the requirements for a Safety Engineering Specialty, and subsequently earning a Master of Science degree in Safety Engineering, both from Texas A&M University in College Station, Texas.

2. I am an actively Licensed Professional Engineer in the State of Texas (P.E., No. 94872) and a nationally Certified Safety Professional (CSP, No. 18059). In addition, I am a professional member of the American Society of Safety Engineers, Human Factors and Ergonomics Society, National Safety Council, International Code Council, and serve on several safety standard development committees for ASTM International.

3. I have specific qualifications and experience regarding the subject matter of this affidavit, to include premises safety, safety management, retail safety, customer safety, material handling, and

Complainant's
Exhibit 1

falling objects/merchandise prevention.  I had extensive education and experience in the field of ergonomics and material handling during both my undergraduate and graduate studies at Texas A&M University, to include working as a research associate at the *Texas A&M National Science Foundation Industry/University Cooperative Research Center in Ergonomics*, and have continued to routinely work in the field of human factors and ergonomics for over 15 years since graduation, to include evaluating manual material handling work tasks, material handling systems, equipment, and procedures relative to worker safety, as well as customer safety in retail environments.

4.  The subject matter relative to this analysis is directly related to my professional knowledge, skills, experience, education, training, and practice, and thus I am fully qualified in all respects to evaluate this matter and offer the professional opinions contained within this affidavit.  All statements made herein are true and correct and based on personal knowledge, facts discovered in this case, and my personal professional opinions in relation to those facts.

5.  In addition to this brief overview of my professional qualifications, attached and fully incorporated herein as part of *Exhibit A* to this affidavit is a true and correct copy of my current curriculum vitae which further details by relevant qualifications.

6.  This affidavit summarizes my findings to date regarding the analysis of an injury event occurring to Ms. Betty Payne, specifically outlining the primary causative factors, and addressing the associated responsibility of Wal-Mart regarding the injury event.  Within this affidavit, "Wal-Mart" refers to Wal-Mart Stores Texas, LLC, with such entity or associated entities understood to own, operate, manage, and/or otherwise control the Wal-Mart retail store (No. 608) located at 4517 N. Midland Drive in Midland, Texas.

## METHODOLOGY

7.  In my evaluation and analysis of this incident, I utilized standard accident investigation methodology in accordance with that published in numerous publications of the National Safety Council and other authoritative published literature, along with standards published by ASTM International, specifically those produced by the ASTM committee E30 on Forensic Sciences, and those published and currently under development by the ASTM committee E58 on Forensic Engineering.  ASTM International, formerly known as the American Society of Testing & Materials (ASTM), is a globally recognized leader in the development and delivery of international consensus standards.

8.   Generally, such methodology includes (a) the review of any physical evidence (equipment, facilities, site locations), including photographs, drawings, and verbal or written descriptions of such physical evidence, (b) any necessary relevant testing to be conducted in regard to such physical evidence, (c) the review of available relevant documents, such as witness accounts (interviews, deposition testimony, statements, etc.), accident reports, safety manuals, equipment manuals, etc., and any additional relevant information available to assist in establishing facts surrounding an event, (d) the review of applicable codes, standards, regulations, authoritative guidelines, and good practice, and (e) the application of such authoritative information, along with my own extensive education, training, and experience in the field of safety engineering, to the analysis of the current matter, and the formulation of opinions and conclusions regarding causation and responsibility.

9.   In addition, this affidavit and attached ***Exhibit A*** contains all information and documents necessary to meet the requirements of Federal Rules of Civil Procedure Rule 26(a)(2)(B) for written reports, which must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

### BRIEF SYNOPSIS OF INJURY EVENT:

10.   It is generally understood that on Wednesday morning, March 14, 2018, Ms. Betty Payne had finished shopping at the Wal-Mart retail store (No. 608) located at 4517 N. Midland Drive in Midland, Texas, and was in the process of checking out at register 15.  Across the checkout aisle behind her, another male customer was in the process of checking out at register 13, to include purchasing a large 50 to 65 inch flat-panel television that he had placed on edge in his shopping cart.   The Wal-Mart cashier walked around her counter and scanned the television tag, and then requested the customer to carry the large television to register 19 so she could remove the anti-theft security tag device.  After the cashier removed the security device, the customer then carried the television back to his cart, where he struggled getting it balanced on edge again on the top edge of

the cart basket. Believing the television was balanced, the customer turned to pay for the purchase using the credit card processing terminal, at which time the large boxed television fell off the shopping cart and impacted Ms. Payne in the lower leg while she was paying for her items at the adjacent register 15, which is understood to have resulted in injury.

11. Two screen captures from surveillance video are shown below, the first showing the scene just after the customer placed the television back into the cart and the cashier had returned to the register to complete the purchase, and the second showing the television after falling from the shopping cart and impacting Ms. Payne, who is just out of the camera view.





<u>**DISCUSSION MATERIAL**</u>

12.   The following select topics that discuss foundational concepts, guidelines, and information based on authoritative published literature and/or standards is intended to assist the reader in understanding the reliable basis for my subsequent opinions and conclusions regarding this matter.

<u>**Safety Engineering and the Hierarchy of Hazard Controls**</u>

13.   Generally, safety engineering is the application of scientific and technical principles to the elimination or reduction of hazards that cause personal injury, property damage, and/or environmental damage through the basic process of the identification, evaluation, and control of hazards.

14.   Regarding the control of hazards, since at least the mid 1900s, the published safety literature and good logical safety practice has widely recognized a "hierarchy of hazard controls," with the most effective means to prevent exposure to a hazard being to first remove or eliminate the hazard if at all possible, and if such hazard cannot be eliminated, then the next most effective method is to physically safeguard the hazard with appropriate safety devices to prevent or minimize exposure, and after all means for removal and safeguarding have been exhausted, any remaining hazards should be addressed (controlled) through the proper use of warnings, procedures/training, and/or personal protective equipment.

15.   In order to achieve these goals, it is necessary to have a proper safety management system in place.   Roger Brauer states, "Management involves the planning, obtaining, organizing, and orchestrating the elements necessary to achieve the goals."   (*Safety and Health for Engineers*, 2006).   OSHA states in various publications that an effective occupational safety and health program will include four critical elements:   management commitment and employee involvement; worksite analysis; hazard prevention and control; and training for employees, supervisors and managers.   For a public premises environment, these elements essential for protecting employees would also naturally protect others using the same facility, such as customers.

<u>**SUMMARY OF OPINIONS AND CONCLUSIONS REGARDING WAL-MART**</u>

16.   Wal-Mart knew or undeniably should have known of their responsibility to exercise reasonable care to establish, monitor, and maintain their commercial retail premises free of hazards likely to cause serious physical harm to their customers or other persons present on their property, and ultimately failed in their responsibility as will be further discussed within this affidavit.

17.  In order to fulfill such responsibility, Wal-Mart knew or should have known that it is necessary to establish and implement a proper safety program to identify, evaluate, and correct hazards with the reasonable potential to cause serious injury.  Such safety program must demonstrate top management's leadership and commitment to safety, to include (a) establishing and implementing proper safety policies and procedures, (b) the proper training of their staff in such policies, in the performance of their work tasks, and in the identification and evaluation of potential hazards, (c) followed with the proper and prompt response to correct identified hazards in accordance with the previously discussed "hierarchy of hazard controls."

18. Specific to this matter, Wal-Mart sells flat-panel televisions (TVs) at their retail stores of various sizes up to and potentially exceeding 65 inches (diagonal screen size).  A 50-inch to 65-inch boxed flat-panel TV can weigh between 36 and 60 pounds, with the boxed product dimensions being approximately 28.5 inches x 44.8 inches x 9 inches for a 50-inch TV to 38 inches x 63 inches x 8 inches for a 65-inch TV.  Wal-Mart displays and sells their TVs primarily in their electronics department, but also at times placed on pallets in the action alleys (main aisles) for sale, clearance, or push items.  Wal-Mart has produced conflicting information concerning the size, make and model of the TV involved in the subject incident, including an alleged sales receipt indicating a 50-inch TV and exemplar photographs depicting 65-inch TVs.  Either way, the bulky size of the TV would have required a team lift, and either TV would not have safely fit within a standard shopping cart.

19.  Given the sale of these large TVs, Wal-Mart has yet to produce any specific policies or procedures on how their large bulky TVs should be displayed on the sales floor, procedures for transporting and handling the large bulky TVs, procedures and communication to customers regarding the transport of the TVs from the location of product display to the cashier, and then to the customer's vehicle for loading, and the specific material handling equipment that should be used for such transport.

20.  Based on Wal-Mart incident investigation photographs and surveillance video, their lack of safety policies and procedures created the circumstance where a customer loaded a boxed 50 to 65-inch flat-panel TV from a merchandise display on the salesfloor into a customer shopping cart, of which the basket is too small to safely contain and stabilize the large TV, then transported such TV through the salesfloor to the cashier checkout station as previously described.  Upon reaching the cashier, such Wal-Mart cashier, along with other front-end managers likely in the vicinity, viewed the oversize TV placed in the shopping cart in which it could not fit or be placed in a stable manner.

Having visualized the TV in this unsafe and precarious position, a well-trained employee would have taken action to eliminate the potential falling merchandise and struck by hazard.  Neither the cashier nor any other front-end employee took appropriate action to eliminate the danger.  The cashier ignored the safety hazard and proceeded to walk around the cart to use a hand-held scanner to scan the barcode, which is located in the same vicinity as the box warnings requiring team lifts.  She then created additional hazards when, after the cashier scanned the TV located in the shopping cart, she requested the customer lift the large TV from the shopping cart unassisted and carry it to another cashier station to remove the security device, and then carry it back to his shopping cart, and which point such cashier could observe as the customer struggled in his attempt to load and balance it back onto the cart.  Yet neither the cashier nor any other front-end employees did anything to eliminate the safety hazard.  The unstable TV subsequently fell from the cart while the customer was attempting to complete the transaction using the credit card processing terminal, ultimately impacting their customer Ms. Payne who was purchasing her items at the register across the aisle facing the opposite direction with her back to the TV and activities.

21.  Specific to the sale of their large TV's, Wal-Mart provides functioning unboxed TVs in their electronics department so customers can view the physical TV and compare the picture quality and features of the various models.  In this regard, Wal-Mart failed to eliminate customers attempting to lift and transport large boxed TVs by developing and implementing policies and procedures to maintain storage of their large boxed TVs in the back storage area, and when a customer selects a TV for purchase from the functional display models, Wal-Mart associates then retrieve the selected new boxed TV from the back storage room, place such TV on an appropriate flatbed cart or dolly (hand truck), and safely transport the TV to the customer vehicle for loading.  Clearly, this would also include maintaining adequate staffing in the electronics department to actively assist customers in selecting TVs and staffing to transport and load the TVs to the customer vehicle.  Upon visiting my local *Target* store in Bryan, Texas, this is the procedure utilized, with the largest boxed TV on their sales floor being a 43-inch TV that can be reasonably and safely loaded into and fit inside a standard shopping cart.

22.  If it is necessary to maintain stock of the large boxed TVs on the salesfloor, a less safe alternative would be to install adequate warning signage at each boxed display location stating "Do not lift or place TV in shopping cart.  Contact sales associate for transport and loading of TV," along with verbal warnings from employees about such procedures to customers shopping for TVs.  Again, adequate staffing would need to be maintained to monitor the sales floor and to transport and load the large TVs.

23.  At the very least, if Wal-Mart was going to allow customers to transport and load the TVs, then they should provide flatbed carts of adequate size to safely transport their largest TVs, the same or similar to those provided at their member Sam's Club stores for customers to load and transport bulky items that do not fit in a standard shopping cart.

24.  While Wal-Mart failed to develop and implement customer safety policies relative to the purchase, transport, and loading of their large flat-panel TV merchandise, they failed to apply the knowledge and content of their safety policies intended for employee safety to the same foreseeable and known activities of their customers.  In this regard, Wal-Mart has various training topics delivered by computer-based learning (CBL) modules and safety meetings, to include the following:

> Department Safety Solutions:
>
> > *Electronics*: Utilize team lifts and material handling equipment such as blue carts or rocket carts when moving heavy or bulky merchandises on the salesfloor and in Receiving.
> >
> > *Always & Everywhere*: Loading Merchandise in Customers Vehicle:  Select the proper material handling equipment that will provide an adequate platform on which to safely move merchandise.
> >
> > - Consider size, shape, weight distribution, and fragility of the merchandise
> > - Use a team lift when merchandise is over 50 pounds
> > - Use an additional associate to steady awkward merchandise when necessary
> > - Keep customers clear of the area while transporting large and potentially unstable merchandise by utilizing an additional associate as a spotter.
>
> Safe Stocking Guidelines:
>
> > Use material handling equipment such as a cart to minimize the distance a load is carried.
> >
> > Ask for help when lifting heavy or bulky loads.  Use team lifts on items that weigh more than 50 pounds or any time an associate feels is necessary.
>
> Practice Safe Lifting Standard Operating Procedure (SOP)
>
> > Request assistance when lifting heavy or bulky loads.
> >
> > Look for the Team Lift logo on boxes to help identify heavy items.
> >
> > Use team lifts on items weighing more than 50 pounds or any time necessary.

Use material handling equipment, such as a cart, to minimize the distance a load is carried

25.   Review of the above policies would absolutely prohibit their employees from performing the same tasks they clearly allowed and even instructed their customer to perform on the date of this incident.  In this regard, they allowed their customer to obtain and transport a heavy, bulky boxed TV in a cart that does not provide an adequate platform to safely move the merchandise.  Wal-Mart further allowed a customer to lift a heavy bulky TV displaying an industry-standard "Team Lift Logo" from the merchandise display into his cart, and then once at the cashier, such customer was instructed by the cashier to lift the TV unassisted and carry to another register, and then return it to the improper cart.

 

Exemplar of Industry-Standard Safety Warning Team Lift Logo on box.

26.   A reasonably prudent retail store should not have a merchandising safety system in place that encourages and allows customers to violate equally applicable employee safety policies.  Allowing large TVs such as in this matter to be transported in a shopping cart not designed for such purpose creates an unreasonable risk of harm for customers and children in their store from being impacted with the unstable heavy and bulky TVs falling from the carts as they are transported through the store, such as ultimately occurred to Ms. Payne in this matter.

27.   In summary, Wal-Mart failed to meet the standard of care necessary to provide a reasonably safe shopping environment for their customers by failing to develop and implement (through adequate staffing, training, supervision, and enforcement) customer safety policies and procedures for displaying, handling, transporting, and loading large, bulky merchandise.  That is, the failures discussed in this affidavit by Wal-Mart created an unreasonable risk of harm that ultimately caused Ms. Payne to be impacted from behind by a large falling TV while shopping in their store.  Further, Wal-Mart knew or should have known of such danger, and yet failed to make the condition safe, or at the very least, adequately warn of such condition as discussed within this report.

### CONCLUDING REMARKS

28.  This affidavit contains my summary opinions to date regarding the causative factors of the incident in this matter, and the associated responsibilities of the indicated parties based on the material supplied and reviewed to date as documented in this affidavit and *Exhibit A*.  Please note that I anticipate and reserve the right to respond to those who might request further clarification of these opinions regarding these or other parties, and the right to re-evaluate and potentially alter these opinions as new or additional information is made available.

FURTHER AFFIANT SAYETH NAUGHT."

_____
Jason T. English, M.S., CSP, P.E.

Sworn to and subscribed before me on the 9th day of May_____, 2019, by Jason T. English.

SUZANNE SCULLY
Notary Public, State of Texas
Comm. Expires 02-20-2020
Notary ID 128888765

_____
Notary Public - State of Texas

# E<span>XHIBIT</span> A

Attachment to the report of:

Jason T. English, M.S., CSP, P.E.

Re: Betty Payne vs. Wal-Mart Stores Texas, LLC.

May 9, 2019

**In accordance with Rule 26(a)(2)(B)(i) and (ii) - Data and other information considered in forming the basis and reasons for opinions expressed in written report.**

DISCOVERY DOCUMENTS SUPPLIED AND OTHER INFORMATION FOR REVIEW

The following discovery documents were supplied and reviewed prior to the preparation of the report :

- Original Complaint.
- Defendant's Original Answer.
- Complainant's responses to Disclosure, Interrogatories, and Requests for Production.
- Defendant's responses to Disclosure.
- Defendant document production.
- Store surveillance video from date of incident.
- Photographs of injury.

PUBLISHED LITERATURE AND REFERENCES

A sample of the published authoritative safety literature and references utilized in forming opinions in this report are listed in the following bibliography:

**Safety Management - Commercial Premises**

American National Standards Institute. *American National Standard - Occupational Health and Safety Management Systems*, ANSI/AIHA Z10-2005.

Czerniak, John and Don Ostrander. *Nine Elements of Successful Safety and Health System*. National Safety Council Press, 2005. pp. 6-15, 22, 36, 54-70, 74-81, 86-92, 99, 124, 144, 156-162.

Gaspers, Karen. "Striving for Zero." *Safety + Health*, April 2004. pp. 30-34.

Grimaldi, John V., and Rollin H. Simonds. *Safety Management*, Fifth Edition. American Society of Safety Engineers, 1989. pp. 104-105, 126-148.

Krause, T. and T. Weekley. "Safety Leadership," *Professional Safety*, November 2005. pp. 34-40.

Manuele, Fred A. *Innovations in Safety Management - Addressing Career Knowledge Needs*. Wiley & Sons, 2001. pp. 72-85.

National Safety Council. *Supervisors' Safety Manual*. Seventh Edition, 1991. pp. 1-9.

National Safety Council. *Accident Prevention Manual for Industrial Operations: Administration and Programs*, Twelfth Edition, 2001. pp. 117-124.

Smith, Michael A.. "It's Not Nice to Injure Your Customers." *Safety & Health*, August 1993. pp. 62-65.

Spellman, Frank R., and Nancy E. Whiting. *Safety Engineering Principles and Practices*, Second Edition. Government Institutes, 2005. pp. 11-13, 59-68, 267-275, 555-574.

Weber, J. Owen. "Developing a Comprehensive Safety Program." *Professional Safety*, March 1992. pp. 33-38.

Williamsen, Michael M. "Six Sigma Safety." *Professional Safety*, June 2005. pp. 41-49.

**In accordance with Rule 26(a)(2)(B)(iii) - Exhibits that will be used to
summarize or support opinions expressed in written report.**

Potential exhibits that may be utilized to summarize and support opinions will be derived from the information and documents contained or referenced in the written report and this Appendix A, with such information potentially being enlarged and/or reformatted.

**In accordance with Rule 26(a)(2)(B)(iv) - Witness's qualifications,**
**including a list of all publications authored in the previous 10 years.**

See Jason T. English's Curriculum Vitae (resume) and list of publications immediately following this page.

**ENGLISH ENGINEERING INC.**

Phone: (979) 431-0702
Cell:  (979) 324-6370
Fax: (877) 353-8607
jason@english-engineering.com

543 William D Fitch Pkwy, Ste. 112
College Station, TX  77845

# JASON T. ENGLISH, M.S., CSP, P.E.

EDUCATION:

| | |
|---|---|
| Post Graduate | Directed Studies in Machine Guarding, Department of Safety Engineering<br>Texas A&M University (College Station), 2002 |
| | Directed Studies in Means of Egress (Walking/Working Surface Design),<br>College of Architecture, Texas A&M University (College Station), 2001 |
| M.S. | Safety Engineering, Department of Safety Engineering<br>Texas A&M University (College Station), 1999<br>(3.83 Graduate GPA) |
| B.S. | Industrial Engineering, Systems Safety Engineering Specialty,<br>Department of Industrial Engineering, Texas A&M University (College Station), 1998 |

CERTIFICATIONS AND REGISTRATIONS:

Registered Professional Engineer (P.E.), Texas, No. 94872

Board Certified Safety Professional (CSP), No. 18059

Certified (English XL) Variable Incidence Tribometrist (CXLT), No. 164 (i.e., certified to measure and evaluate pedestrian traction on walking surfaces utilizing the English XL slip meter)

PROFESSIONAL MEMBERSHIPS:

American Society of Safety Engineers

Human Factors and Ergonomics Society

ASTM International
    Committees: F13 on Pedestrian/Walkway Safety and Footwear;  F15 on Consumer Products;
    F08 on Sports Equipment and Facilities;  E58 on Forensic Engineering; E30 on Forensic Sciences

International Code Council

National Safety Council

EXPERIENCE:

Consultant - English Engineering Inc., July 2009-Present.

Accident cause analysis.  Industrial, premises, and product related accident investigation.  Workplace safety engineering.  Machine guarding.  Premises safety engineering (especially stairs, ramps, and level walking surfaces).  Product safety engineering.  Design of adequate warnings and instructions.  Industrial, construction, premises, and product safety management.  Fall protection and prevention (same level and from elevation).  Human factors and ergonomics.  Analysis of manual material handling tasks.  System safety analysis.  Safety research.

Additional services include construction monitoring services (residential and commercial), product evaluations, slip resistance testing, safety audits, and other miscellaneous consulting.

Associate, Professional Consultant – Nelson & Associates, May 1999-July 2009.

Same as stated above in first paragraph regarding accident cause analysis.

Construction Inspector – Independent Contracting, 2004 – 2008

Perform construction progress and quality inspections of primarily new residential construction.

Research Associate – Texas A&M University, Texas Engineering Experiment Station, National Science Foundation Industry/University Cooperative Research Center in Ergonomics, Aug. 1997-May 1999.

The Ergonomics Center research areas included:  manual lifting, energy expenditure, anti-fatigue mats, cart pushing/pulling, office ergonomics (workstation design, posture, repetitive motion, effects of 21" monitors in the office environment), validation of distal upper extremity strain index, and heat stress.

Research was done in cooperation with Industry Partners, which included United Services Automobile Association (USAA), United Parcel Service (UPS), Browning-Ferris Industries (BFI), Aluminum Company of America (ALCOA), INTEL Corporation, and Neutral Posture Ergonomics.

SELECT GRADUATE AND UNDERGRADUATE COURSEWORK:

Safety Engineering

- Product Safety Engineering
- Industrial Safety Engineering
- System Safety Engineering
- Engineering Ethics
- Facilities Location, Layout, & Material Handling

Human Factors & Ergonomics

- Occupational Biomechanics
- Human Information Processing (Human Factors)
- Worker Physiology
- Biological Control System Analysis (Ergonomics)
- Ergonomics & Work Methods
- System Safety Analysis & Design (Ergonomics)

Industrial Hygiene & Occupational Health

- Industrial Hygiene Engineering
- Occupational and Environmental Health
- Acoustics & Noise Control
- Environmental Protection & Public Health
- Occupational & Environmental Epidemiology
- Radiological Safety

Support Areas

- Construction Materials & Methods 1
- Construction Materials & Methods 2
- Electrical Circuits & Instrumentation
- Principles of Statistics 1
- Principles of Statistics 2
- Design & Analysis of Experiments (Statistics)

Post Graduate

- Means of Egress (Design of Stairs, Ramps, Level Surfaces, Changes in Elevation, Lighting; Code Administration)
- Machine Guarding (Principles, Concepts, and Techniques)

PRESENTATIONS

- Invited Speaker, ASSE Gulf-Coast Chapter Meeting, "The Prevention of Walking/Working Surface Related Falls," 2007.
- Guest Lecturer, Texas A&M University, SENG 313 – Product Safety Engineering, Fall 2002.

CONFERENCES AND SEMINARS ATTENDED:

- "Prevention Through Design - Slips, Trips, and Falls," American Society of Safety Engineers, 2014.
- "Z359 Fall Protection Code," American Society of Safety Engineers, 2013.
- "Managing Contractor Safety," American Society of Safety Engineers, 2012.
- "A10 Standard on Multi-Employer Worksite Safety," American Society of Safety Engineers, 2012.
- "Rethink Safety:  A New View of Human Error and Workplace Safety," ASSE, 2011.
- "Slip, Trip, and Fall Prevention in the Restaurant Industry," American Society of Safety Engineers, 2011.
- "Human Factors in Product and Interface Design," Human Factors and Ergonomics Society, 2011.
- "Slips, Trips, and Falls: Best Practices and Standards," American Society of Safety Engineers, 2009.
- "Changes to the ASSE/ANSI Z117.1 Standard - Safety Requirements for Confined Spaces," ASSE, 2009.
- "Ergonomics Workshop: Using the 3D Static Strength Prediction Program™," Center for Occupational Health and Safety Engineering, University of Michigan, 2009.
- Conference and Exposition, Sessions attended:  "Treating Your Own Back Injuries," "Leading with Safety:  The Patch to Excellence," "Moving to Task Based Lock-Tag-Try," National Safety Council/Texas Safety Assoc., 2008.
- Photogrammetry – Single Photo Perspective, 2006.
- Conference and Exposition, Sessions attended:  "Commercial Vehicle Crashes, Trends, and Prevention Techniques," "Safety Management Leadership: Delivering a High Level of Performance," National Safety Council/Texas Safety Association, 2006.
- Managing Contractor Safety, American Society of Safety Engineers, 2006.
- "Fall Protection," American Society of Safety Engineers, 2006.
- Variable Incidence Tribometer Certification Program, International Safety Academy, 2005.
- "Solving Means of Egress Issues in Commercial Buildings," International Code Council, 2005.
- "Mobile Crane Safety," Crane Institute of America, 2005.
- Safety 2003 Conference and Exposition (3-day), Sessions attended: "Hospitality Safety: Results Beyond Compliance," "Safety After Hours (Consumer Product Safety)," "Ladder Safety - Using the A14 Standards as a Benchmark," "Risk Management for Crane and Rigging Operations," "Contractor Safety: Know the Risks...And Manage Them," "Integrated Hazard Analysis:  Using the Strengths of Multiple Methods to Maximize Effectiveness," "Machine Safeguards: What to Use and When?," "Fall Protection for Difficult Exposures," ASSE, 2003.
- "Fall Protection," Texas Worker's Compensation Commission, 2001.
- "Trenching and Shoring," Texas Worker's Compensation Commission, 2001.
- "Construction Safety," Texas Workers' Compensation Commission, 2001.

PRE-COLLEGIATE:

Eagle Scout

**List of Publications**
**Jason T. English, M.S., CSP, P.E.**


"Application of the ADA Means of Egress Provisions to Construction, Alterations, and Existing Facilities of Public Entities," Nelson & Associates Fact Sheet, 2002, (Revised 2005).

"Application of the ADA Means of Egress Provisions to New Construction, Alterations, and Existing Facilities of Private Entities," Nelson & Associates Fact Sheet, 2001 (Revised 2005).

"Back Belts and Manual Materials Handling," Nelson & Associates Fact Sheet, 2002.

"Basic Elements of (Illumination) Lighting," Nelson & Associates Fact Sheet, 2004.

"Dark Adaptation," Nelson & Associates Fact Sheet, 2008.

"Five Types of Same-Level Falls," Nelson & Associates Fact Sheet, 2006.

"How to Convert:  Slope-% Slope-Degrees-Grade-% Grade," Nelson & Associates Fact Sheet, 2007.

"Human Vision During the Walking Process," Nelson & Associates Fact Sheet, 2008.

"Machine Guarding – The Basic Principles and Techniques," Nelson & Associates Fact Sheet, 2007.

"Premises Management Responsibility for the Establishment and Implementation of the Basic Elements of Premises Safety Programming," Nelson & Associates Fact Sheet, 2001.

"Say 'Goodbye' to the Standard Building Code (SBC), Uniform Building Code (UBC), and the BOCA National Building Code, Say 'Hello' to the International Building Code (IBC)," Nelson & Associates Fact Sheet, 2006.

"The Effects of Jerking Motions During Manual Lifting Tasks," Nelson & Associates Fact Sheet, 2001.

**In accordance with Rule 26(a)(2)(B)(v) - List of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition.**

See "Depositions and Trials List - Past 4 years" immediately following this page.

## Deposition and Trials List - Past 4 Years

## Jason T. English, M.S., CSP, P.E.

Daniel Rodriguez vs. HEB Grocery Company, L.P., In the District Court of Cameron County, Texas, 444th Judicial District, No. 2012-DCL-3068-H, Deposition: 8-22-13, Trial: 8-15-17.

Katherine Mahurin vs. Edward Fry, et al., In the First Judicial District Court, County of Santa Fe, New Mexico, No. D-101-CV-2012-03411, Deposition: 5-22-14; Trial: 8-12-15

Elizabeth Matthews, et al. vs. Kroger Texas, L.P., In the U.S. District Court for the Northern District of Texas, Fort Worth Division, No. 4:13-CV00090-Y, Deposition: 8-5-14;  Trial: 9-2-15

Steve E. Maclin vs. Darnco, LLC d/b/a EuroCare & Last Act T, LLC, Judicial Workplace Arbitrators, Inc., No. 813-A 2014, Deposition: 4-15-15

Pamela Hinderman vs. HEB Grocery Company, L.P., American Arbitration Association, No. 70 160 00103 13, Deposition: 4-30-15.

Mercedes Sanchez vs. The Kroger Co., et al., In the District Court of Harris County, Texas, 152nd Judicial District, No. 2012-57914, Deposition: 5-11-15.

Susan K. Stelly, et ux. vs. Dolgencorp, LLC, United States District Court, Western District of Louisiana, Lafayette Division, No. 6:14-cv-694, Deposition: 6-2-15.

Barbara Semons vs. Houston Party Rental, Inc., In the District Court of Harris County, Texas, 80th Judicial District, No. 2014-07399, Deposition: 6-17-15.

Asa Ferrell vs. Tyson Foods, Inc., United States District Court, Eastern District of Texas, Sherman Division, No. 4:14-cv-775, Deposition: 7-21-15, Trial: 11-19-15.

Irene Ramirez, et al. vs. IronRock Resources, Inc., et al., In the District Court of Gray County, Texas, 223rd Judicial District, No. 37360, Deposition: 7-28-15.

Paul Lopez vs. Applied Petroleum Technologies, Ltd., Arbitration – Dispute Resolutions, Inc., Deposition: 9-15-15.

Caleb Warden vs. Sunland Construction, Inc., et al., In the District Court of Jefferson County, Texas, 58th Judicial District, No. A195-057, Deposition: 10-7-15.

Deborah Casey vs. East Texas Burger Co. and Cintas, In the District Court of Wood County, Texas, 402nd Judicial District, No. 2013-297, Deposition: 10-13-15.

Austin Blake Stephens, et al. vs. Minnie Laverne Barber, In the District Court of Fannin County, Texas, 336th Judicial District, No. CV-15-42033, Deposition: 10-26-15

Edualdo Martinez vs. Stagg Restaurants, LLC, et al., American Arbitration Association, No. 01-14-0001-1683, Deposition: 11-23-15, Arbitration: 12-1-15.

Carlos Giles vs. Craig W. Johnson Enterprise d/b/a Texas Hydraulics & Pneumatics, Judicial Workplace Arbitrations, Inc., No. 854-A 2015, Deposition: 1-18-16.

Dustin Lohman vs. Pelican Refining Company, LLC, et al., In the District Court of Harris County, Texas, 113th Judicial District, No. 2015-24240, Deposition: 1-27-16.

Eric Lopez vs. Associated Wholesale Grocers, Inc., et al., In the District Court of Tarrant County, Texas, 368th Judicial District, No. 348-271346-14, Deposition: 1-28-16.

James P. Foster, et ux. vs. R& L Foods, Inc. d/b/a KFC/Taco Bell/Pizza Hut, In the District Court of Bexar County, Texas, 288th Judicial District, No. 2015CI09543, Deposition: 2-2-16.

Jose Alfredo Martinez vs. Tyson Foods, Inc., In the United States District Court for the Western District of Texas, San Antonio Division, No. 5:15-CV-00271-XR, Deposition: 2-2-16.

Ann Gill vs. Starbucks Corporation, et al., In the District Court of Tom Green County, Texas, 340th Judicial District, No. C140167C, Deposition: 2-5-16.

Belinda Smith vs. The Home Depot USA, Inc., In the District Court of Harris County, Texas, 190th Judicial District, No. 2014-65363, Deposition: 2-23-16.

David King, et ux. vs. Agri-Empresa Transload & Storage, LLC, et al., In the District Court of Ector County, Texas, 70th Judicial District, No. A-139,474, Deposition: 3-3-16.

Leigh A. Humphreys vs. John Robert Henderson, In the 87th District Court of Anderson County, Texas, No. 87-12186, Deposition: 3-9-16.

Diane Tomlinson and Safeway, Inc. vs. The CL BK Stonebriar Hotel, LLC, et al., In the County Court at Law No. 2, Dallas County, Texas, No. CC-14-01191-B, Deposition: 3-16-16.

William C. Norvell, Jr. vs. Seidel Properties, Ltd., In the District Court of Comal County, Texas, 274th Judicial District, No. C2015-0455C, Deposition: 4-11-16.

Darren Craddock vs. CN Berry, LLC, et al., In the District Court of Bexar Country, Texas, 45th Judicial District, No. 2015-CI-01968, Deposition: 4-13-16, 2nd Deposition: 8-25-16, Trial: 4-4-17.

Jose Gerardo Ceron vs. Cargo Airport Services USA, LLC, In the District Court of Harris County, Texas, 215th Judicial District, No. 2014-48659, Deposition: 4-29-16.

Anita Mendoza Willis, et al. vs. Denton County Electric, et al., In the District Court of Denton County, Texas, 442nd Judicial District, No. 2011-20347-158, Deposition: 5-31-16.

Cesar Ponce, et ux. vs. Post Oak Houston Real Estate Holding, Inc., In the District Court of Harris County, Texas, 55th Judicial District, No. 2014-71605, Deposition: 6-1-16.

George Caballero vs. Denny's Inc., et al., In the District Court of Harris County, Texas, 269th Judicial District, No. 2015-21182, Deposition: 6-13-16.

Isaias Munoz vs. Lovett Custom Homes, Inc. et al., In the District Court of Harris County, Texas, 61st Judicial District, No. 2014-36224, Deposition: 6-29-16, Trial: 5-16-17.

Denise Monceaux vs. The Kroger Company, United States District Court, Western District of Louisiana, Lake Charles Division, No. 2:14 CV 2492, Deposition: 7-7-16.

Anne Buhler vs. Wal-Mart Stores Texas, LLC, United States District Court, Southern District of Texas, Victoria Division, No. 6:15-CV-25, Deposition: 7-26-16.

Nora Mendoza vs. Neiman Marcus Group, LLC, JAMS Arbitration, No. 1310021715, Deposition: 7-28-16, Arbitration: 12-12-16.

Stacey McAdams vs. SC Legacy Independence, Ltd., In the County Court at Law No. 4, Dallas County, Texas, No. CC-15-01824-D, Deposition: 8-10-16.

Dr. Robert Brace vs. City of McAllen, Texas, In the District Court of Hidalgo County, Texas, 93rd Judicial District, No. C-0514-15-B, Deposition: 8-11-16.

Kelly Vinci vs. Neiman Marcus, JAMS, No. 1310021709, Arbitration: 10-3-16.

Alejandro Lopez vs. CS Metals, Inc., et al., In the District Court of Brazoria County, Texas, 412th Judicial District, No. 80494-CV, Deposition 10-10-16.

Paige Rawstron vs. North Valley Ltd. Co., et al., County of Santa Fe, New Mexico, 1st Judicial District, No. D-101-CV-2015-00347, Trial: 10-27-16.

Veronica Hansen, et ux. vs. Topcon, Inc., et al., In the District Court of Hidalgo County, Texas, 206th Judicial District, No. C-5600-15-D, Deposition: 11-17-16, Trial: 12-6-16.

Katherine Baxter, et ux. vs. CVS Pharmacy, Inc., In the District Court of Harris County, Texas, 165th Judicial District, No. 2015-71766, Deposition: 11-30-16

Gustavo Aguilar vs. Alliance Residential, LLC, In the U.S. District Court for the Southern District of Texas, Houston Division, No. 4:16-cv-00118, Deposition: 2-3-17

Charles K. Andrews vs. Kenney Industries, Inc., In the American Arbitration Association, No. 01-15-0005-8676, Arbitration: 2-7-17.

Bessie Rawls, et ux. vs. Houston Kosal Investment, Inc. d/b/a Baytown Seafood, et al., In the District Court of Harris County, Texas, 165th Judicial District, No. 2015-63440, Deposition: 2-10-17.

Nicole Cuomo vs. SMG d/b/a Reliant Park, et al., In the District Court of Harris County, Texas, 165th Judicial District, No. 2014-35933, Deposition: 3-8-17.

Wayne L. Prescott, In the District Court of Denton County, Texas, 442nd Judicial District, No. 16-03967-442, Deposition: 3-22-17.

Robert Collums, Jr. et al. vs. Texas Pipe and Supply Co., et al., In the District Court of Harris County, Texas, 127th Judicial District, No. 2016-15178, Deposition: 3-24-17.

Theresa Barnett vs. Carnival Corporation, In the U.S. District Court for the Southern District of Florida, No. 1:16-cv-20170-RNS, Deposition: 3-28-17.

Luis Cantu vs. Panhandle Steel Erectors, Inc., et al., In the District Court of Dallas County, Texas, 192nd Judicial District, No. DC-14-14032, Deposition: 3-31-17.

Esmeralda Gavlik vs. Corpus Christi Athletic Club, LLC, In the County Court at Law No. 2 of Nueces County, Texas, No. 2016CCV-61608-2, Deposition: 4-17-17.

Stephen Sanders vs. Buc-ee's, Inc., et al., In the District Court of Comal County, Texas, 22nd Judicial District, No. C2015-0488A, Deposition: 4-25-17.

Corrine San Juan vs. HEB Grocery Company, L.P., American Arbitration Association, No. 01-16-0000-7967, Deposition: 5-5-17, Arbitration: 8-17-17.

Pamela Parker vs. Duane Ahrens, et al., In the District Court of Washington County, Texas, 335th Judicial District, No. 35671, Deposition: 5-9-17.

Multiple Plaintiffs vs. Barnett Outdoors, LLC, et al., Various Courts in Texas and Florida, Deposition: 5-11-17, Deposition: 7-28-17.

Max Castillo vs. Gulf Coast Acquisitions Company, LC, In the District Court of Refugio County, Texas, 135th Judicial District, No. 2014-2-11789, Deposition: 6-19-17.

Cheri Ward vs. Steve Montgomery Co., Inc. d/b/a McDonalds, In the Circuit Court of Hempstead County, First Division, Arkansas, No. 29CV-15-55-1, Deposition 7-19-17.

Jennifer Adams vs. PS of Dallas County, Inc. d/b/a ProSource Dallas, Inc. et al., In the County Court at Law No. 4, Dallas County, Texas, No. CC-16-01375-D, Deposition: 7-24-17.

Jessica Broussard vs. Omni Hotels Corporation, et a., In the County Court at Law No. 2, Nueces County, Texas, No. 2016CC-61092-2, Deposition: 8-16-17, Trial 2-22-18.

Jane Ferguson-Suter vs. Eltz-Gateway LP, et al., In the District Court of Dallas County, Texas, 162nd Judicial District, No. DC-16-13705, Deposition: 8-30-17.

Braidi Ortiz, et al. vs. Centre Square, LLC, In the Third Judicial District, County of Dona Ana, New Mexico, No. D-307-CV-2016-01398, Deposition: 9-7-17.

Gerald Strickland vs. One Hour Air Conditioning and Heating, et al., In the County Court at Law No. 1, Nueces County, Texas, No. 2015CCV-61282-1, Deposition: 9-18-17.

Raina Guevara, et al. vs. CBL & Associates Properties, Inc. d/b/a Parkdale Mall, et al., In the District Court of Jefferson County, Texas, 58th Judicial District, No. A197788, Deposition: 9-26-17.

Kelly Shane Hearne vs. Charles Duncan McMillan d/b/a Anthony Sign Company, In the District Court of Lamar County, Texas, 6th Judicial District, No. 85944, Malone/Hearne, Depo: 11-10-17, Trial: 12-6-17.

Debra Bailey, et al. vs. HealthSouth Corporation, et al., American Arbitration Association, No. 01-17-0001-7809, Depo: 1-18-18.

Benito Conde, et al. vs. Pay and Save, Inc. d/b/a Lowe's Market, et al., First Judicial District, County of Santa Fe, New Mexico, No. D-101-CV-2016-00505, Depo: 2-14-18, Trial: 5-2-18.

Anna Miller vs. Navarro Commons, Ltd., et al., In the District Court of Victoria County, Texas, 135th Judicial District, No. 15-10-78574-B, Depo: 3-13-18.

Todd Venable, et al. vs. Giles Automotive, et al., In the 15th District Court for the Parish of Lafayette, Louisiana, No. 2012-6365, Division G, Depo: 3-14-18.

Kenneth Mooney vs. H.E. Butt Grocery Company, In the District Court of Victoria County, Texas, 135th Judicial District, No. 17-02-80620-B, Depo: 3-28-18.

Kevin McCrea, et al. vs. Kidde Fire Trainers, Inc., et al., In the Circuit Court of the 11th Judicial Circuit for Miami Dade County, Florida, No. 2013-19836 CA 06, Depo: 4-3-18.

Amber Rozas, et al. vs. Kroger Texas L.P., et al., In the District Court of Harris County, Texas, 269th Judicial District, No. 2016-55455, Depo: 4-12-18.

Robert Bolden vs. Dr. Pepper Snapple Group, Inc., In the District Court of Harris County, Texas, 133rd Judicial District, No. 2017-39519, Depo: 4-18-18.

Patdrick Davis vs. American Homestar Corporation, et al., Arbitration: 4-23-18

Consuelo Gonzales vs. Harlingen Medical Center, et al., In the District Court of Cameron County, Texas, 444th Judicial District, No. 2016-DCL-06956-H, Depo: 5-11-18

Katie Ann Poirrier, et al. vs. Cynthia Elam Darwin, et al., In the District Court of Galveston County, Texas, 10th Judicial District, No. 17-CV-0936, Depo: 5-22-18

Cleaster Brantley vs. Reddy Ice Corporation d/b/a Reddy Ice, Judicial Workplace Arbitrations, No. JWA 1053-A-2017, Depo: 6-15-18.

Christene Jacobson, et al. vs. HEB Grocery Company, LP, et al., American Arbitration Association, No. 01-16-0004-3433, Depo: 6-20-18, Arbitration: 8-13-18.

Joaqin Limon, et al. vs. Laura Garza, et al., In the 430th District Court of Hidalgo County, Texas, No. C-0542-17-J, Depo: 7-31-18.

Kathleen Bourgeois vs. Acadiana Mall CMBS, LLC, et al., 15th Judicial District, Parish of Lafayette, Louisiana, No. 2015-5468, Div. G, Depo: 8-27-18.

John Kent Stephenson vs. Caterpillar, Inc., et al., U.S. District Court, Eastern District of Texas, Marshall Division, No. 2:16-CV-00071-JRG-RSP, Depo: 8-29-18.

Courtney Persons vs. GPI TX-SV, Inc. d/b/a Metro Volkswagen, 116th Judicial District Court of Dallas County, Texas, No. DC-16-15196, Depo: 9-5-18.

Sherry Davidson vs. University of Mary Hardin-Baylor, 169th Judicial District Court of Bell County, Texas, No. 286,755-C, Depo: 9-6-18.

Ida Michelle Gonzales, et al. vs. Sears, Roebuck and Co., 429th Judicial District Court of Collin County, Texas, No. 429-04971-2015, Depo: 9-17-18.

Robert Vaughn, et al. vs. Lake Charles Joint Venture, LLC d/b/a Comfort Suites, et al., 14th Judicial District Court, Parish of Calcasieu, Louisiana, No. 2017-1522, Div. G, Depo: 9-27-18.

Rosalinda Hernandez, et al. vs. Worley Welding Works, Inc., Judicial Workplace Arbitrations, JWA No. 1078-A 2017, Depo: 10-12-18.

Bridgette Taylor, Ind. and Rep of Estate of Troy Taylor, Deceased vs. Alliance Residential Builders, LP, et al., 165th Judicial District of Harris County, Texas, No. 2016-69818, Depo: 10-26-18.

Lydie Moulds and Ron Moulds vs. Lousiana Stadium and Exposition District and SMG, Civil District Court for the Parish of Orleans, Louisiana, Division M-13, No. 2016-4670, Depo: 12-17-18.

Updated through March 6, 2019


This list has been compiled and maintained in accordance with Rule 26(a)(2)(B)(v), which requires a list of cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition. Further information relative to my client or details of my opinions will not be provided per the following:

**Rules Concerning the Practice of Engineering and Professional Engineering Licensure**
**Texas Administrative Code, Title 22: Examining Boards**
**Part 6 Texas Board of Professional Engineers**

**Chapter 137: Compliance and Professionalism**
**SUBCHAPTER C: PROFESSIONAL CONDUCT AND ETHICS**
**§137.61 Engineers Shall Maintain Confidentiality of Clients**
(a) The engineer may reveal confidences and private information only with a fully informed client's or employer's consent, or when required by law or court order; or when those confidences, if left undisclosed, would constitute a threat to the health, safety or welfare of the public.
(b) The engineer shall not use a confidence or private information regarding a client or employer to the disadvantage of such client or employer or for the advantage of a third party.

(c) The engineer shall exercise reasonable care to prevent unauthorized disclosure or use of private information or confidences concerning a client or employer by the engineer's employees and associates.

**In accordance with Rule 26(a)(2)(B)(vi) - Statement of compensation to be paid
for the study and testimony in the case.**

See "Fee Schedule" immediately following this page.

# ENGLISH ENGINEERING INC.

Phone: (979) 431-0702
Cell:  (979) 324-6370
Fax: (877) 353-8607
jason@english-engineering.com

543 William D Fitch Pkwy, Ste. 112
College Station, TX  77845

## JASON T. ENGLISH, M.S., CSP, P.E.
### FEE SCHEDULE

Receipt of case materials or requests for work from client after receiving this fee schedule will indicate client's acceptance of its terms.

Basic corporate rate for Professional Engineering Services is $325.00 per hour (plus expenses).
  Basic rate is charged for all professional services provided, including general consultation, inspections, standard and literature search/review, product evaluation, accident cause analysis, lab or field testing, and document review.  Exception: Any service listed separately within this fee schedule.

Expert witness testimony (Deposition, Trial, Arbitration, etc.) is $400.00 per hour.

Travel time is $250.00 per hour (with an 8-hour maximum per day).

A **non-refundable retainer of $1500.00** is required to engage my services on forensic matters where I will be disclosed as an expert witness.  The retainer will be fully applied to future billing.  No one is authorized to disclose or designate me as an expert witness without my permission, and until the retainer is paid in full.

## BILLING POLICIES

BILLING STATEMENTS/INVOICES are due within 30 days.  Accounts that age more than 30 days beyond the billing date are considered non-current.  Any unpaid balance is subject to interest at a rate of 20 percent per annum, with a 60 day grace period from date of original invoice/statement.  I reserve the right to stop work on any account (and all accounts for the same client) for non-payment of services.  Further, if I choose to continue providing services to clients with poor payment history, such services will be provided by payment in advance.

CLIENT IS RESPONSIBLE FOR PAYMENT OF ALL FEES:  When clients make agreements with **third parties** (including other attorneys, insurance companies, their clients, etc.) regarding payment of certain fees, terms must be payment in advance from such third parties.  Payments not received in advance must be paid by client under payment terms stated herein whereupon clients may then seek reimbursement from such third parties at their own discretion.  No direct billing of third parties will be made.

REPORTS AND DEPOSITIONS:  Accounts must be brought current prior to the preparation of technical reports and the scheduling of expert witness deposition testimony.

POTENTIAL TRIAL TESTIMONY:  Should trial appearances be requested, account balance, plus reasonably estimated time and expense associated with trial must be paid in advance.

RESPONSES TO MOTIONS TO EXCLUDE OR STRIKE TESTIMONY:  The preparation of an affidavit response to a Daubert motion to strike or exclude my testimony will be done at no charge with reasonable advance notice.

TRANSPORTATION EXPENSES:  Every attempt is made to minimize travel time and expense.  Use of personal auto is charged at standard IRS mileage rate.  Commercial air travel is charged at cost.  Special note: Regardless of the required airport pre-flight arrival time for passenger screening, and potential long flight connection times, only actual flight time plus a maximum 1 hour for required airport pre-flight arrival time and 1 hour for each flight connection will be charged.  No further charges will be made for longer flight connection times or flight delays.

MISCELLANEOUS EXPENSES:  Other miscellaneous expenses to include special mailing or shipping expenses, required copy services, exhibit production expenses, special photographic/video supplies and reproductions, use of required test equipment, and other requested expendable supplies are charged at cost.

When scheduled deposition or trial dates are cancelled less than 2 working days before the requested time of appearance, any time spent in preparation for anticipated testimony (before notification was received) will be charged.

Expedited Service Charge:  A 25% surcharge will be assigned (a) when requests for work are received less than 3 weeks prior to a required deadline date, and (b) when case materials are received for review less than 3 weeks prior to a deadlined report/affidavit, a scheduled deposition date, or date of scheduled trial testimony.  A 50% surcharge will be assigned in the prior stated circumstances if time is less than 1 week.

Weekend work:  A 25% surcharge will be assigned to work hours scheduled by clients on weekends (excluding necessary return or arrival travel to or from scheduled weekday work locations).

Additional policies may apply for situations not anticipated by this fee schedule.  Fees are subject to reasonable periodic change.

Tax ID number is 26-4258520.